IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD L. CRUM,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

No. 6:16-cv-00102-HZ

OPINION & ORDER

Kathryn Tassinari
Drew L. Johnson
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

    Attorneys for Plaintiff

//

//

//

1 - OPINION & ORDER

Billy J. Williams
Janice E. Hebert
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Heather L. Griffith
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Donald Crum brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Court reverses the Commissioner's decision and remands this case for an immediate award of benefits.

## BACKGROUND

Plaintiff was born in 1962 and was 51 years old at the time of his administrative hearing. Tr. 78.[1] He earned a GED and has past work experience as a roofer, meat trimmer, and power shovel operator. Tr. 79–80, 95–96. Plaintiff applied for DIB and SSI benefits on September 20, 2011, alleging a disability onset date of September 17, 2011, due to lower-back and hip problems. Tr. 57, 190–94, 216. The Commissioner initially denied his application and Plaintiff requested a hearing. Tr. 129–151, 163. An administrative hearing was held on September 26, 2013, before Administrative Law Judge ("ALJ") Marilyn S. Mauer. Tr. 76. On March 10, 2014,

---

[1] Citations to "Tr." Refer to pages of the administrative record transcript, filed here as ECF No. 9.

ALJ Mauer issued a written decision denying Plaintiff's application. Tr. 57–67. Plaintiff's request for review of the decision was denied by the Appeals Counsel on November 24, 2015, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–7.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

3 - OPINION & ORDER

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements and had not engaged in substantial gainful activity since September 17, 2011. Tr. 59. At step two, the ALJ found that Plaintiff had the following severe impairments: "severe degenerative disc disease of the lumbar spine with few clinical signs; osteoarthritis of the right knee with meniscal tear; and obesity." *Id.* At step four, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of the listed impairments. Tr. 61. The ALJ found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently. He can sit, stand, and walk each six hours in an eight our day, for a combined total of eight hours of activity. He requires the option to sit or stand at will while still performing essential tasks. He can occasionally climb ladders, ropes, and scaffolds, and he can occasionally climb ramps and stairs. He can occasionally stoop, crouch, crawl, and kneel. The Claimant can frequently balance. He must avoid exposure to vibration and he should have no more than occasional exposure to hazards such as unprotected heights and large moving equipment.

Tr. 62. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 65–66. At step five, the ALJ found that given Plaintiff's background and limitations, he could perform jobs that existed in significant numbers in the national economy including ticket seller, cashier, and small products assembler. Tr. 66–67. The ALJ concluded that Plaintiff was not disabled. Tr. 67.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to credit the testimony of treating physician Dr. Collin Lynn; (2) failing to give clear and convincing reasons for rejecting Plaintiff's testimony; (3) rejecting lay witness testimony; and (4) failing to meet her burden of proving that Plaintiff retained the ability to perform other work in the national economy. Pl. Br.

at 10–11, ECF 13. Additionally, Plaintiff argues that the opinion of Dr. Todd Lewis, issued two weeks after the ALJ's written opinion, shows that the ALJ's decision was not based on substantial evidence. *Id.*

## I. Medical Opinion Testimony

The ALJ gave the opinion of Dr. Lynn little weight when determining that Plaintiff was not disabled. Tr. 64. In social security cases, there are three types of medical opinions that courts accord different weight. *Valentine*, 574 F.3d at 692. Generally, more weight is given to the opinion of a treating source than to an examining source and more weight is given to the opinion of an examining source than to a non-examining source. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). An ALJ will give "controlling weight" to a treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If the opinion is contradicted, the ALJ must provide "specific and legitimate reasons" for rejecting it. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotation and citation omitted). Specific and legitimate reasons for rejecting a treating physician's opinion include its reliance on a claimant's discredited subjective complaints or its inconsistency with the medical records or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Valentine*, 574 F.3d at 692–93. If a treating physician's opinion is inconsistent with substantial evidence, then it is not entitled to "controlling weight," but it may still be

"entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

### A. Dr. Lynn's Testimony

Plaintiff first established care with Dr. Lynn on October 25, 2011, just over a month after his alleged disability onset date of September 11, 2011. Tr. 377. At the initial visit, Dr. Lynn wrote that Plaintiff was "to the point where [sic] can't even walk a block without hurting too much – the pain is deep down in his right hip, and his legs go numb from mid thigh to his toe." Tr. 377–78. Regarding Plaintiff's musculoskeletal condition in his right hip, he noted that Plaintiff "exhibits decreased range of motion, decreased strength and tenderness." Tr. 379. At that time, Plaintiff was on multiple pain medications including gabapentin, Percocet, and lorazepam. Tr. 378. Plaintiff stated that he quit taking gabapentin because it was making him "fuzzy in the head." *Id.* Dr. Lynn ordered an x-ray exam of Plaintiff's hips which revealed "multiple vertebral compression deformities . . . mild scoliosis concave to the left . . . multilevel degenerative changes which appear to be at least moderate in degree at the L1-2 and L2-3 levels and to a lesser degree at the L4-5 level." Tr. 390.

In November 2011, Dr. Lynn noted that Plaintiff's pain in his lower back was "severe to the point where patient couldn't stand or take a shower or go to the bathroom." Tr. 388. Dr. Lynn further commented that Plaintiff's numbness in his right leg worsened with walking "even just a black or a half a block." *Id.* Plaintiff reported that he ran out of pain medication and is not in as much pain as before because he was not working any longer. Tr. 374. Dr. Lynn conducted another physical exam and found, once more, that Plaintiff's right hip exhibited decreased range of motion and decreased strength. Tr. 375. Plaintiff also had "[p]ain on the right in deep hip with straight leg raise at approximately 60 degrees." *Id.*

An MRI conducted on November 11, 2015 showed "[s]evere changes of spondylosis" with "[p]rominent facet and disk degeneration result in multilevel severe foraminal narrowing L1-2, L2-3, L4-5." Tr. 389. The MRI also identified degenerative marrow edema at L1-2 and L2-3 levels as well as a broad-based protrusion at L4-5, "multilevel disc osteophyte ridge and disc bulge formation with a moderate degree of canal narrowing." *Id.* There was also severe narrowing at L1-2, L2-3, and L4-5. *Id.*

On March 6, 2012, Dr. Lynn conducted a CT scan of Plaintiff which identified: an intrinsic lesion of the left L5; additional multilevel facet degeneration, most notably at L1-2, L2-3, and L4-5 where there is broad based herniation; and severe foraminal narrowing at right L1-2, left L1-2 and bilateral L4-5. Tr. 385. On May 9, 2012, Plaintiff told Dr. Lynn that he had been unable to work as a roofer and "really misses going to work." Tr. 466. Dr. Lynn conducted a physical exam and noted slightly increased reflexes on the right side. *Id.* Strength testing was inconclusive and Plaintiff's light touch sensations appeared to be intact. *Id.*

On August 21, 2013, Dr. Lynn conducted a follow-up physical examination of Plaintiff. Tr. 461. Dr. Lynn noted that Plaintiff "still [couldn't] walk for any distances without needing to stop and rest" and was having problems with standing, sitting, or walking for extended periods of time. *Id.* Dr. Lynn's physical examination of Plaintiff showed that he exhibited tenderness in his right hip and decreased range of motion and decreased strength. Tr. 462. Additionally, Plaintiff's lumbar back exhibited decreased range of motion, pain, and spasm. *Id.* Another MRI was performed that re-demonstrated "anterolisthesis at L4-5, retrolisthesis at L2-3, and multilevel wedging at the thoracolumbar junction involving at least T12 and L1 vertebrae." *Id.* The MRI also showed that "[d]isc space is severe narrowing at L1-2 and L2-3 with moderate narrowing at

L3-4 associated with irregularity as previously noted." *Id.* The MRI also showed marrow edema associated with L1, L2, and L3. *Id.*

Also on August 21, 2013, Dr. Lynn completed a questionnaire regarding Plaintiff's physical residual functional capacity. Tr. 455–459. Dr. Lynn diagnosed Plaintiff with lumbago, numbness and tingling, weakness in the legs and hips, and neurogenic changes. Tr. 455. Regarding Plaintiff's symptoms, Dr. Lynn wrote that he had pain in his lower back made worse by walking as well as prolonged sitting or standing. *Id.* Dr. Lynn stated that Plaintiff was not a malingerer. Tr. 456. He also stated that Plaintiff's symptoms were severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks and that Plaintiff was incapable of tolerating even low stress jobs. *Id.*

Regarding Plaintiff's functional limitations, Dr. Lynn stated that he could walk two city blocks without rest. *Id.* Dr. Lynn also indicated that Plaintiff could sit for fifteen minutes at one time before needing to get up and could stand for ten minutes at one time before needing to sit down, or walk. *Id.* Plaintiff could sit for four hours and stand or walk for two hours in an eight-hour work day. Tr. 457. Plaintiff also needs to walk every thirty minutes for at least five minutes. *Id.* Dr. Lynn indicated that Plaintiff will need to take unscheduled breaks every twenty minutes for ten minutes. *Id.* He also indicated that Plaintiff could occasional lift ten pounds and rarely lift twenty pounds. *Id.* Finally, Dr. Lynn indicated that Plaintiff would need to be absent more than four days per month as a result of his impairments. Tr. 458.

On September, 4, 2013, Dr. Lynn examined Plaintiff again, commenting that his pain was still severe and that he could hardly walk. Tr. 474. Dr. Lynn ordered a new MRI because Plaintiff's previous MRI was eighteen months old at that time. *Id.*

//

9 - OPINION & ORDER

### B.     The ALJ's Treatment of Dr. Lynn's Testimony

After recounting some of Dr. Lynn's testimony, the ALJ determined that his opinion was entitled to little weight:

> Although Dr. Lynn has a treating relationship with the claimant, his opinion is given little weight as it is inconsistent with his treatment notes, which document only limited physical findings upon examination of the claimant. Moreover, Dr. Lynn notes at the beginning of the questionnaire that the claimant is limited by pain with walking, sitting, and standing. However, as discussed above, the claimant's reported activities and his testimony indicate that he is capable of more than the limitations identified by Dr. Lynn.

Tr. 64. The ALJ does not provide any further explanation for his treatment of Dr. Lynn's testimony. The ALJ provided three reasons for rejecting Dr. Lynn's opinion: (1) it was inconsistent with his treatment notes; (2) it was inconsistent with Plaintiff's daily activities and testimony; and (3) the opinion of examining physician Dr. Cory Maughan was more consistent with medical evidence in the record. Tr. 63-64.

#### 1.     Inconsistent with Treatment Notes

As discussed in detail above, on multiple occasions Dr. Lynn identified Plaintiff's severe spinal conditions and pain in his lower back, hips, and lower extremities. Plaintiff's x-rays, MRIs, and CT scan identified numerous moderate to severe conditions afflicting Plaintiff's spine and musculoskeletal system. Consistent with those findings, Dr. Lynn's physical examinations of Plaintiff showed that Plaintiff had a decreased range of motion and decreased strength in his right hip. Defendant identifies Dr. Lynn's May 2012 exam, alleging that he found "no nerve or sensory deficit, normal coordination, slightly asymmetric reflexes, and no other abnormal orthopedic findings." Def. Br. at 8, ECF 14 (citing Tr. 466). Plaintiff's abilities in those areas do not belie Dr. Lynn's lumbago diagnosis or his opinion regarding Plaintiff's functional capacities. Dr. Lynn indicated that, due to severe pain, Plaintiff would need frequent unscheduled breaks

and could not sit, stand, or walk for prolonged periods of time. Plaintiff's physical coordination and ability to respond to sensory stimuli are not contradictory to Dr. Lynn's assessment. Accordingly, ALJ failed to produce substantial evidence showing that Dr. Lynn's opinion was inconsistent with his treatment notes.

        2.      *Inconsistent with Plaintiff's Daily Activities and Testimony*

At the hearing, Plaintiff testified that he could sit for fifteen to twenty minutes, stand for ten to fifteen minutes, and probably walk for twenty to thirty minutes before needing to rest. Tr. 84. Plaintiff also stated that he thought that on the average day, the maximum amount of weight that he could comfortably lift was fifteen to twenty pounds. *Id.* Regarding his daily activities, Plaintiff testified that he is the primary caretaker of his seven year old granddaughter; he goes grocery shopping twice a month with his wife; and he performs household chores including washing dishes, preparing meals, and laundry. Tr. 86–87. Plaintiff also stated that he rides his bike. Tr. 63, 484. Regarding grocery shopping, Plaintiff explained that because he cannot stand and walk for very long, he only helps his wife with shorter trips. Tr. 86. As to washing dishes, Plaintiff stated that "I have me a stool in the kitchen that I sit on because I can't stand there too long and – to do it because it hurts." Tr. 87. Plaintiff also explained that he has to move around a lot, frequently change positions, and needs to lie down on a flat surface each day to rest. Tr. 86–87.

The ALJ did not explain how Plaintiff's daily activities or testimony were inconsistent with Dr. Lynn's opinion. The Court assumes, based on Defendant's arguments, that Plaintiff's daily activities were inconsistent with Dr. Lynn's opinion that Plaintiff was limited in his sitting, standing, and walking due to pain. Def. Br. at 9. Defendant also argues that Plaintiff's testimony that he needed to lie down once a day was inconsistent with Dr. Lynn's opinion that Plaintiff

needed multiple unscheduled breaks. *Id.* First, Plaintiff's own estimations of his sitting, standing and walking limitations were substantially the same as Dr. Lynn's assessment in the questionnaire. Tr. 84, Tr. 455. Both stated that that Plaintiff could not sit, stand, or walk for prolonged periods of time without needing breaks. As to Plaintiff's daily activities, Plaintiff's qualifications that he only went on short grocery shopping trips and needed to frequently stop while performing household chores is consistent with Dr. Lynn's opinion regarding his functional limitations.[2]

Moreover, the care the Plaintiff provided to his seven year old granddaughter in the periods before and after school while his wife was away at work is also consistent with Dr. Lynn's opinion regarding Plaintiff's functional limitations. Plaintiff's abilities to sit, stand, and walk for short periods of time before needing a break is consistent with his ability to prepare meals for his granddaughter and otherwise take care of her. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. A disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation and citation omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (stating that many home activities may not be easily transferable to work environment, where it might not be possible to rest periodically or take medication).

   3.   *The Opinion of Dr. Maughan*

Plaintiff also argues that the ALJ erred by giving greater weight to Dr. Maughan's opinion than to Dr. Lynn's opinion. Pl. Br. at 13–14. The ALJ's written decision relied heavily

---

[2] Dr. Lynn did not discuss what implication, if any, that Plaintiff's ability to ride his bike had for his functional limitations. While the ALJ mentioned Plaintiff's ability to ride his bike, she did not explain how this indicated that he did not have the functional limitations discussed in Dr. Lynn's opinion.

upon Dr. Maughan's opinion and gave it considerable weight. Tr. 63–64. Dr. Maughan opined that Plaintiff could stand and walk for four hours in an eight hour workday. Tr. 487. He also opined that Plaintiff could sit for four hours during a work day. *Id.* Dr. Maughan stated that Plaintiff could carry twenty-five pounds frequently and fifty pounds occasionally. *Id.* He did not opine about whether Plaintiff needed to take any unscheduled breaks during the work day or whether he would need to be absent from work due to his limitations. Dr. Maughan also made several statements qualifying his findings above. As to Plaintiff's standing, walking, and sitting capacities, he noted that Plaintiff "stated during the exam that he is unable to sit in one place for extended periods of time without a significant worsening in his symptoms." Tr. 487.

      Dr. Maughan found that Plaintiff's MRI results were "quite severe," stating that while "the claimant's physical exam did not suggest that it is causing significant impairment during his visit today. He did state subjectively that his symptoms are significantly worse after walking 1-2 blocks or standing for 15-30 minutes at a time. This is reasonable given the severity of his MRI findings." Tr. 487. Dr. Maughan was surprised by Plaintiff's performance on his physical exam that day despite his MRI:

> It should be noted at this time that based on the severity of his MRI findings, I was expecting much more positive exam than occurred today. He, surprisingly, was able to perform the majority of his range of motion and strength testing without impairment. He did state that he has a high pain threshold and has always been a very hard worker. He states that he does not often complain of physical ailments, even though they are present.

Tr. 484. While the ALJ gave Dr. Maughan's opinion considerable weight, she formulated an RFC that was more limited. Tr. 64. The ALJ found that Plaintiff could only lift ten pounds frequently and twenty pounds occasionally. Tr. 62. However, she also found that Plaintiff could sit, stand, and walk for a combined six hours in an eight hour day with sit or stand at will

13 - OPINION & ORDER

options. *Id.* The ALJ did not include any limitations regarding unscheduled breaks or absences from work.

The Court agrees with Plaintiff that the ALJ should have accorded Dr. Lynn's opinion greater weight than to Dr. Maughan's opinion. First, as the treating physician, Dr. Lynn was entitled to deference, and his course of treatment of Plaintiff over time created a longitudinal picture of Plaintiff's impairments. *See* 20 C.F.R. § 404.1527(c)(2) (stating that courts give more weight to treating sources who have provided a detailed longitudinal picture of a claimant's conditions than from a source that conducted a single examination). Dr. Lynn treated Plaintiff over the course of two years, conducted multiple physical examinations, and reviewed multiple forms of medical imaging of Plaintiff's musculoskeletal system. In any event, Dr. Maughan wrote that Plaintiff's MRI was "quite severe." Dr. Maughan's findings regarding Plaintiff's functional limitations were drawn from a single examination, the results of which Dr. Maughan admitted were surprising. Tr. 484. Dr. Lynn stated that Plaintiff would have "good days" and "bad days" and Plaintiff admitted that he had a high threshold for pain. Tr. 458, 487. Plaintiff's performance on the physical exam with Dr. Maughan is further qualified by Plaintiff's admissions that his symptoms worsened with prolonged sitting, standing, or walking, which Dr. Maughan acknowledged was reasonable given the "severity of his MRI findings." Tr. 487. Moreover, the questionnaire that Dr. Maughan filled out did not include questions about whether Plaintiff would need to take unscheduled breaks or whether he would need to be absent from work due to his limitations. Tr. 489–94.

Dr. Lynn and Maughan's opinions appear to be largely consistent with each other rather than contradictory. The Court finds that the ALJ's decision to reject Dr. Lynn's opinion that Plaintiff would need multiple unscheduled breaks in a day and would be absent from work

14 - OPINION & ORDER

multiple times in a month was not supported by substantial evidence in the record. This conclusion is further reinforced by the findings of Dr. Lewis, who also stated that plaintiff was likely to miss work two to three times a month and would need up to three unscheduled breaks per day. Tr. 13. The parties agree that the MRI that Dr. Lewis considered, which was taken after the ALJ issued her opinion, was similar to the prior MRI findings. Pl. Br. at 15; Def. Br. at 11; Tr. 59. The Court finds that the similarity between the two MRIs strengthens, rather than weakens, the conclusion that Plaintiff had the functional limitations discussed by Drs. Lynn and Lewis.

### C. *Harmless Error*

Because the Court finds that the ALJ's decision to reject the testimony of Dr. Lynn was not supported by substantial evidence, the next question is whether that error was harmless. "A decision of the ALJ will not be reversed for errors that are harmless." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (quotation and citation omitted). For an error to be harmless, it must be inconsequential to the ultimate non-disability determination. *Id.* at 1055. Here, the ALJ's rejection of Dr. Lynn's testimony was not harmless. If the ALJ had included in Plaintiff's RFC the functional limitations that Dr. Lynn opined about, then she would have concluded that Plaintiff was disabled. At the hearing, the ALJ asked the VE how many jobs would tolerate the amount of unscheduled breaks and absences that Dr. Lynn said Plaintiff would need. Tr. 97–98. The VE testified that there would be no work for someone who had to take a five minute break every ten to fifteen minutes and that only one absence a month is tolerated. Tr. 98. Therefore, the ALJ's rejection of Dr. Lynn's testimony was harmful.

//

//

**II.    Remand**

The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate aware of benefits is proper. *Garrison*, 759 F.3d at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). As to the first requirement, the Court finds that the record has been fully developed and that further administrative proceedings would serve no purpose. In conducting this inquiry, the Court must determine whether there are inconsistencies between Dr. Lynn's testimony and the medical evidence in the record and whether there is any evidence that the ALJ overlooked which casts serious doubts on Plaintiff's claim that he is disabled. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016). As discussed in detail above, the Court has found that Dr. Lynn's testimony is consistent with the medical evidence in the record, rather than contradictory to it. Dr. Lynn's findings regarding Plaintiff's functional limitations are consistent with medical imaging of Plaintiff's musculoskeletal system, physical exams, and the opinions of other physicians. Specifically, Dr. Lewis's opinion regarding Plaintiff's functional limitations is substantial the same as Dr. Lynn's opinion. Further, Dr. Maughan's opinion is largely consistent with Dr. Lynn's notwithstanding their discrepancy as to Plaintiff's carrying and lifting capacities and Dr. Maughan's silence on unscheduled breaks and absences from work. Moreover, while the

opinions of reviewing medical consultants found that Plaintiff could perform work at light exertional levels, the Court finds that Dr. Lynn's opinion, as that of the treating physician, should be given greater weight and be adopted. 20 C.F.R. § 404.1527(c).

Regarding the second element, as discussed above, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Lynn's opinion. As to the final element, if the ALJ incorporated Dr. Lynn's opinion regarding Plaintiff's functional limitations into the RFC, then she would have concluded that Plaintiff was disabled. The VE testified that there would be no jobs for an individual who required the amount of unscheduled breaks and absences from work that Dr. Lynn testified that Plaintiff would need. Accordingly, once Dr. Lynn's testimony is given credit-as-true, the ALJ would be required to find Plaintiff disabled. Therefore, remand for an immediate award of benefits is required.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for an immediate award of benefits.

IT IS SO ORDERED.

Dated this ___ day of ___Feb___, 2017.

MARCO A. HERNÁNDEZ
United States District Judge

17 - OPINION & ORDER